This writer dissents with the majority because it is this writer's view that the majority engages in excessive fact-finding to reach a desired result. It is this writer's opinion that appellant's first assignment of error sounds in manifest weight even though it was not labeled as such. Although I agree that some of the evidence is undisputed, other evidence is adversarial, and the majority employs fact-finding.
As the majority holds "appellant had the burden of proving, by a preponderance of the evidence, that she was entitled to a stalking civil protection order." The majority explains that it applied the logic of the Supreme Court of Ohio where the Court, in a similar situation, held that when granting a civil protection order pursuant to R.C. 3113.31, "the trial court must find that petitioner has shown by a preponderance of theevidence that the petitioner * * * [is] in danger of domestic violence." (Emphasis added.) Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus.
In assessing a claim that a judgment is against the manifest weight of the evidence, the Supreme Court has held that "`[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" Seasons Coal Co., Inc. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, quoting C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279. An appellate court reviews the entire record, weighs the evidence and all reasonable inferences from it, considers the witnesses' credibility, and decides whether, in resolving the conflicts in the evidence, the finder of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v. Davis (1988), 49 Ohio App.3d 109, 113. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In making a determination that a judgment is against the manifest weight of the evidence, we are aware that the trier of fact is in the best position to view the witnesses and their demeanor; thus, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact. Shemo v. MayfieldHeights (2000), 88 Ohio St.3d 7, 10; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226. Therefore, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings."State ex rel. Celebrezze v. Environmental Enterprises, Inc. (1990),53 Ohio St.3d 147, 154. See, also, Gans v. Andrulis (May 18, 2001), Portage App. No. 99-P-0118, unreported, 2001 WL 530490, at 5.
It is this writer's view, contrary to what the majority states, that appellant did not provide "a significant amount of evidence showing that a number of incidents took place between June 1998, * * * and July 2000 * * *." Furthermore, I do not agree with the majority's statement that "the trial court found most of appellant's allegations credible." In fact, quite the opposite is true; after reviewing the November 27, 2000 judgment entry, the trial court concluded that appellee's childish phone calls and two break-ins over a twenty-three month period did not constitute conduct which would knowingly cause appellant to believe that appellee would cause her physical harm. The trial court stated that the "two break-ins by [appellee were] not closely related in time." The court also determined that appellee's "breaking into the home on two occasions was idiotic."
The trial court explained that appellant described her mental distress as a problem with sleeping and that her description fell "substantially short of the definition of mental distress per the statute." Therefore, it is my opinion that the majority's factual analysis takes excessive license with the record here in reference to both the magistrate's findings and the trial court's decision.
I also believe that the majority's statement in the opinion that "these were not the only instances in which appellee acted inappropriately" is another example where they indulge in fact-finding because neither the trial court nor the magistrate made such conclusions. For instance, the majority states that appellee "called appellant on several occasions * * *." Although there was reference in the magistrate's decision to such claimed calls, there was no finding that there were such phone calls made by appellee on several occasions. More precisely, the magistrate found that appellant "claimed that since late 1998, she receives late nightphone calls from [appellee] which he denies." (Emphasis added.) It is apparent that the magistrate did not conclude that appellant's testimony on this issue was sufficiently credible and persuasive to make a finding of fact consistent with appellant's statements on this point.
The majority's decision also determined that there was a "pattern of conduct [by appellee] in this case, * * * i.e., the forcible entries, the phone calls, the thinly veiled threats, and the face-to-face meetings * * *." Yet, nowhere in the magistrate's findings or the trial court's judgment entry did they find that there was any pattern of conduct regarding telephone harassment or thinly veiled threats made by appellee. The trial court did determine that appellee's "conduct causing the alleged fear [was] extremely vague." (Emphasis added.) This would indicate again that neither the magistrate nor the trial court accorded credible weight to appellant's testimony regarding the "veiled threats."
Furthermore, the majority states that the trial court found "appellee's actions to be `idiotic' and `childish.'" However, the trial court specifically found that appellee's "breaking into the home on two occasions was idiotic[,]" and that "[s]ome of his phone calls to [appellant were] at least childish." (Emphasis added.)
Lastly, the majority claims that the trial court found "the vast majority of appellant's testimony to be accurate." Yet, after reviewing both the magistrate's decision and the trial court's judgment entry, this writer does not understand where the "vast majority" of appellant's testimony was found to be accurate or credible by either the magistrate or the trial court.
Since it is my opinion that the majority engaged in excessive fact-finding to reach a desired result, I fail to perceive where the magistrate's findings and the trial court's decision were against the manifest weight of the evidence. Therefore, I respectfully dissent.