[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 7.]

SHEMO ET AL., APPELLANTS, *v.* MAYFIELD HEIGHTS ET AL., APPELLEES.

[Cite as *Shemo v. Mayfield Hts.*, 2000-Ohio-258.]

*Municipal corporations—Zoning–Reinstatement of trial court's judgment declaring unconstitutional Mayfield Heights' U-2-A (cluster single-family) zoning classification of an undeveloped 22.6-acre parcel of land.*

(No. 98-2054–Submitted November 17, 1999–Decided February 9, 2000.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 73241.

_____

{¶ 1} Plaintiffs-appellants Michael Shemo and Larry Goldberg are owners of an undeveloped 22.6-acre parcel of land in Mayfield Heights. The property is a generally triangular tract of land, with commercial properties bordering to the south, residential properties to the west on Bonnie Lane, and Interstate 271 to the east. Six Cleveland Electric Illuminating ("CEI") high-tension power lines traverse the eastern edge of the property. These power lines, along with high-intensity lighting from Interstate 271, run the entire eastern length of the property. In addition, CEI, pursuant to an easement, has the right to uninterrupted access to the property.

{¶ 2} The property was initially zoned U-1 for single-family homes. In June 1995, appellants sought to invalidate the U-1 single-family zoning classification and filed a complaint for declaratory relief against defendants-appellees, the city of Mayfield Heights and individual city council members ("the city"). As part of this action, the parties entered into a stipulation that the U-1 zoning was unconstitutional and that Mayfield Heights had the right to rezone the property pursuant to *Union Oil Co. of California v. Worthington* (1980), 62 Ohio St.2d 263, 16 O.O.3d 315, 405 N.E.2d 277. Over appellants' objection, on the same day that the city signed

the stipulation, Mayfield Heights City Council enacted Ordinance 1995-42, which rezoned the property to a U-2-A (cluster single-family) classification.

{¶ 3} Appellants then sought to invalidate the U-2-A zoning classification and to have the property rezoned to permit retail and warehouse use (U-4 classification). Following a visit to the property and a ten-day trial, the trial court determined, pursuant to the two-pronged test in *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533, that the U-2-A residential zoning did not substantially advance a legitimate health, safety, or welfare concern of the city and denied the owner of the property an economically feasible use of the land. Thus, the trial court declared the U-2-A zoning classification unconstitutional.

{¶ 4} The city appealed that decision. Pursuant to *Union Oil Co. v. Worthington, supra,* the court of appeals remanded the case to the trial court to determine whether appellants' proposed retail and warehouse use of the property was reasonable. The trial court found that the proposed use was reasonable, and the city filed another appeal.

{¶ 5} During the pendency of the appeal, *Gerijo, Inc. v. Fairfield, supra,* which the trial court had relied upon, was modified by *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 690 N.E.2d 510. Because of this change in the law, the appellate court vacated the trial court's judgment and remanded the case for further determination in light of *Goldberg*.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Sheldon Berns* and *Benjamin J. Ockner; Chester, Willcox & Saxbe, L.L.P.,* and *J. Craig Wright; Forbes, Forbes & Associates* and *George L. Forbes,* for appellants.

*The Carr Law Firm, L. Bryan Carr* and *Leonard F. Carr*, for appellees.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 7} In this case, we are asked to decide whether Mayfield Heights' U-2-A zoning classification of the property is unconstitutional. Initially, we must decide whether the court of appeals was correct in remanding the case for reconsideration under the *Goldberg* decision. For the reasons that follow, we find that remand to the trial court was unnecessary. Since there was competent, credible evidence supporting the trial court's conclusion that the U-2-A zoning classification does not substantially advance a legitimate health, safety, and welfare concern of Mayfield Heights, we reverse the judgment of the court of appeals and reinstate the trial court's judgment declaring the zoning ordinance unconstitutional.

{¶ 8} Prior to our decision in *Goldberg Cos., Inc. v. Richmond Hts. City Council, supra,* this court adhered to a two-part test when reviewing the legitimacy of zoning ordinances. Under that test, which was set forth in *Gerijo, Inc. v. Fairfield, supra,* we held that "[a] party who attacks a municipal zoning ordinance on constitutional grounds must prove, beyond fair debate, both that the enactment deprives him or her of an economically viable use and that it fails to advance a legitimate governmental interest." *Id.* at syllabus. In *Goldberg*, we revisited this test and determined that the economic-viability prong is applicable only to those cases where the owner alleges a taking of the property. *Id*., 81 Ohio St.3d at 210, 690 N.E.2d at 512. We found that "*Gerijo* established an unduly broad standard that encompassed both the standard for challenging the constitutionality of zoning regulations and the test to prove a taking." *Id*. at 213, 690 N.E.2d at 514. In modifying *Gerijo*, we discarded the two-prong test in favor of a single criterion. Thus, under *Goldberg*, where no taking is alleged, we need only decide whether the ordinance was " 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " *Id*., quoting *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 314.

**{¶ 9}** The court of appeals determined that a remand was necessary because the trial court did not have the opportunity to apply the case law articulated in *Goldberg*, which was decided during the pendency of the appeal. Appellants contend that remand is unnecessary because they had already shown that the ordinance was unconstitutional under the more stringent test of *Gerijo*. Thus, appellants maintain that even without the evidence regarding economic viability, there was still sufficient evidence presented to support the trial court's decision that the zoning ordinance failed to substantially advance legitimate governmental interests. The city disagrees, believing that remand is necessary, since the trial court's decision wrongly considered both prongs of the *Gerijo* test, and because the economic-viability prong is inextricably intertwined with the health/safety/welfare prong.

**{¶ 10}** We find no merit in the city's argument that the trial court incorrectly relied upon economic viability to come to the conclusion that the zoning ordinance was unconstitutional. A review of the trial court's decision reveals that the trial court discussed each prong of the *Gerijo* test separately, and independently found the ordinance unconstitutional under each prong of the test. Under these circumstances, where the trial court's opinion clearly sets forth the evidence relied upon to show that the zoning ordinance was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare, the *Goldberg* standard has been met and there is no need for a remand to the trial court. Furthermore, we have previously held that a remand to consider new case law is unnecessary where the new case law has lessened the standard of proof for the prevailing party. See *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 699 N.E.2d 507. Since the trial court found that the zoning ordinance was unconstitutional under the more stringent *Gerijo* test, we find that it is

unnecessary in this case to remand for reconsideration under the lesser *Goldberg* standard.[1]

{¶ 11} We must next decide whether there was competent, credible evidence to support the trial court's judgment. In reviewing the trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Furthermore, judgments supported by competent, credible evidence going to the material elements of the case will not be disturbed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 12} In considering the evidence, we begin with the premise that all zoning ordinances are presumed constitutional. *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 583-584, 653 N.E.2d 639, 642. However, a zoning ordinance will be struck down if a property owner challenging the ordinance proves, beyond fair debate, that the ordinance is "arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." *Goldberg, supra*, 81 Ohio St.3d at 214, 690 N.E.2d at 515.

{¶ 13} The city argued that the zoning ordinance advances three legitimate governmental health, safety, and welfare concerns: (1) it will maintain the residential character of the neighborhood, (2) it will maintain a balanced mix of uses in the city, and (3) it will not exacerbate traffic congestion and noise in the

---

1. Nor is remand to the court of appeals necessary to consider the assignments of error that were raised there by the city. Most of the alleged errors are implicitly resolved in determining the constitutionality of the zoning classification. Furthermore, we believe that the case can be appropriately decided by this court, since there is a comprehensive record before us and since the trial court made extensive findings of fact. See *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 18-19, 526 N.E.2d 1350, 1357. As for the remaining arguments, we reject the allegation that the city was prejudiced by the appearance of attorney George Forbes. We also decline to consider whether the court erred by refusing to consider expert testimony concerning economic viability, since that prong is irrelevant to the case at hand.

area. The trial court found that appellants proved beyond fair debate that these concerns were not valid and that the ordinance was unconstitutional. We agree, and find that the trial record is replete with evidence to support the trial court's findings.

{¶ 14} With respect to the argument that the U-2-A zoning was intended to advance the city's interest in maintaining the residential nature of the neighborhood, appellants presented ample evidence to show that this interest is not met by the U-2-A zoning. The property in question is located near the intersection of Interstate 271 and Mayfield Road. Although there are residential properties to the north and west on Ridgebury Boulevard and Bonnie Lane, the predominant uses to the south are commercial. The Golden Gate Shopping Center is located to the southwest of the intersection. A Best Buy store, a Budgetel Motel, and a Bob Evans restaurant are adjacent to the property. The Eastgate Shopping Center is east of Interstate 271 and north of Mayfield. In total, there are approximately three-quarter million square feet of retail space located in the vicinity of the property.

{¶ 15} Nonetheless, the city argues that the area needs to be kept residential in nature. For support, the city presented the testimony of some current residents who are opposed to the commercial development of the property because there will likely be increased traffic in their neighborhood. While we do not mean to minimize the concerns of these residents and, in fact, sympathize with their plight, we cannot ignore the fact that their homes are adjacent to high-density commercial property, which carries with it a heavy volume of traffic. Traffic on the interstate alone exceeds ninety-two thousand vehicles passing by appellants' property daily. Therefore, although their streets are obviously residential in nature, Robert Hill, city planner for several Cleveland suburbs, stressed that the existing development pattern around appellants' property indicates a nonresidential character. We reject the city's argument that the U-2-A zoning is necessary to maintain the residential character of the neighborhood.

{¶ 16} We also reject the city's argument that the U-2-A zoning classification is necessary to advance the legitimate governmental interests of maintaining a balanced mix of uses in the city and decreasing traffic congestion in the area. Since the area contains both residential and commercial properties, there already exists a balanced mix of uses in the city. The goal of attaining a balance between both types of uses will be met regardless of whether the appellants' property is zoned for commercial or residential use. In addition, the city requires a six-foot masonry wall as a buffer between the retail and residential uses, which will help lessen the commercial feel of the area. Therefore, the trial court did not err in finding that a balanced mix of uses is not a legitimate governmental concern.

{¶ 17} Nor did the trial court err in rejecting the city's argument that decreasing traffic congestion is a legitimate governmental concern. Although the U-4 zoning classification would increase traffic in the area, one of appellants' expert witnesses testified that the impact of the increased traffic would not be severe. Moreover, the current driveway configuration for the Best Buy, Budgetel, and Bob Evans properties is poorly designed and is described by a Mayfield Heights police officer as a safety hazard. However, appellants have proposed to widen and replace the current driveway at their expense and to have a traffic light installed to improve the flow of traffic in the area and to alleviate current safety concerns. Appellants have also proposed to limit direct access from their property to the residential streets to cases of emergency only. While promoting traffic safety may be one factor courts can consider in determining whether a zoning ordinance is valid (see *Columbia Oldsmobile, Inc. v. Montgomery* [1990], 56 Ohio St.3d 60, 66, 564 N.E.2d 455, 461), the city has not demonstrated that it is a legitimate concern in this case.

{¶ 18} The trial court also found that the property is not suitable for residential use. According to the trial court, the property is degraded by the adjacent interstate, which carries with it extreme noise, pollution, and high-

intensity lighting. Furthermore, the property has CEI high-tension poles and wires running the entire length of its eastern border. Given these characteristics, the court found that the property is not habitable.

{¶ 19} The city contests these findings and the trial court's conclusion that the property is uninhabitable by downplaying the negative effects of the interstate and by pointing out that there are other residential properties adjacent to the interstate. Although there are other residential properties along the interstate, various witnesses testified that appellants' property is different from those properties and that its unique characteristics make it not suitable for habitation. For instance, expert witness real estate appraisers Roger Ritley and Wesley Baker both testified that this property is perhaps the only site along Interstate 271 surrounded by high-tension lines, two-family zoning, and retail uses. Even the city's expert witness, city planner David Hartt, concedes this point. Moreover, the high-intensity lights along this part of Interstate 271 are so bright that one witness testified that he was able to read a newspaper at 10:30 p.m., without any other source of illumination. In addition to the six high-tension power poles, CEI's easement also encumbers the property. The irregular shape, small size, and grading of the property (which is even with the highway) also adversely affect the habitability of the parcel.

{¶ 20} Although the city's expert planner, David Hartt, testified that the property is habitable, even he had to admit that given the surrounding characteristics of the property, the potential occupants of residential units would be limited to elderly and/or childless residents who are uninterested in using their yards on a regular basis. The trial court was free to reject testimony that the property is habitable in favor of the wide array of evidence that showed that the property is unsuitable for residential use.

{¶ 21} The city also maintains that appellants themselves have caused the property to become a small, irregularly shaped remnant by selling off various

portions of their property over the years. Furthermore, the city points out that it was appellants' decision to grant CEI the easement, which they now complain has a negative effect on the habitability of the property. Under these circumstances, the city argues, appellants should not be afforded relief from their self-created hardships.

{¶ 22} We acknowledge the principle that property owners are not afforded relief from self-created hardships. *Reed v. Rootstown Twp. Bd. of Zoning Appeals* (1984), 9 Ohio St.3d 54, 55-56, 9 OBR 260, 261, 458 N.E.2d 840, 842. However, the situation presented here differs from those cases relied upon by appellee. For instance, in *Reed,* property owners deliberately created from a larger property a lot that was not in conformity with the applicable minimum lot size. Therefore, they acted in direct contravention of a zoning resolution. In this case, appellants did not take action in violation of an established zoning resolution. Instead, over the years they made business decisions to sell off various portions of the original piece of property. While these decisions did cause their property to be difficult to develop as a residential property, other factors that adversely affect the property, such as the construction of the interstate and the installation of high-intensity lighting, were beyond their control. Under these circumstances, we decline to apply the principle that denies relief to owners who created their own hardship, and find that the trial court's conclusion that the property is uninhabitable is supported by competent, credible evidence.

{¶ 23} Since appellants have shown that the city lacks any legitimate governmental health, safety, and welfare concerns in support of the U-2-A zoning classification, we find that the trial court was correct in declaring the U-2-A zoning ordinance unconstitutional.

{¶ 24} We must next decide whether the trial court was correct in determining that appellants' proposed commercial use of the property was reasonable. We find that there was competent, credible evidence to support this

conclusion. As previously shown, the property is unsuitable for residential use and is more appropriate for commercial use. The evidence presented shows that appellants' proposed commercial use of the property includes a plan to help alleviate current traffic concerns in the area of the Best Buy, Budgetel, and Bob Evans properties by changing the configuration of the existing driveway and installing a traffic light. In addition, the city requires a six-foot masonry wall and a forty-foot setback as buffers. We find that the trial court was warranted in holding that the proposed U-4 commercial classification is not detrimental to the health, safety, and welfare concerns of the city and is a reasonable classification of the property.

{¶ 25} We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————