[Cite as *Hawkins v. Hawkins*, 2017-Ohio-4201.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| DONNA HAWKINS | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2016-CA-26 |
| | : | |
| v. | : | T.C. NO. 2013-DR-190 |
| | : | |
| GREGORY D. HAWKINS | : | (Civil Appeal from Common Pleas |
| | : | Court, Division of Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# **O P I N I O N**

Rendered on the 9th day of June, 2017.

. . . . . . . . . . .

RONALD C. TOMPKINS, Atty. Reg. No. 0030007, 121 S. Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

JOHN C.A. JUERGENS, Atty. Reg. No. 0037120, 1504 N. Limestone Street, Springfield, Ohio 45503
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Gregory D. Hawkins appeals from a decision of the Champaign County Court of Common Pleas, Domestic Relations Division, granting him and plaintiff-appellee Donna Hawkins "Judgment Order and Decree of Divorce" on September 20, 2016. Gregory filed a timely notice of appeal with this Court on October 20, 2016.

**{¶ 2}** Gregory and Donna were originally married in 1976, but divorced four years later in 1980. Although they were divorced, the parties continued to cohabitate with one another for the next twenty-two years. In 2002, the parties remarried in Las Vegas, Nevada. We note that two children were born as a result of the parties' union, but both children were emancipated at the time that the instant litigation occurred.

**{¶ 3}** The parties are owners of real property located at the following addresses: 2529 St. Rt. 245, Cable, Ohio (the marital residence), and a 5.708 acre lot located next to the marital residence. The parties purchased the properties in 1995 and 1998, respectively, prior to their remarriage in 2002. Also at issue was Gregory's business, Pro-Rite Mufflers, located at 396 E. 9th Street in Marysville, Ohio. The evidence established that Gregory opened his business in 1988, but did not purchase the property on which the business is situated in Marysville until during the parties' second marriage. Both parties' names are on the deed to the business property in Marysville. The record established that although the business was started by Gregory, it later became a marital asset as a result of the actions taken by the parties.

**{¶ 4}** On July 25, 2013, Donna filed a complaint for divorce. On September 23, 2013, Gregory filed his answer and counterclaim. Thereafter, Donna filed her answer to Gregory's counterclaim on September 27, 2013. Both parties hired appraisers in order to valuate the marital assets for distribution, specifically the muffler business. Gregory hired Heather Deskins, d/b/a P.D. Eye Forensics, to appraise the business. Deskins testified that she calculated the value of the business to be $0.00 (zero dollars). Donna hired an individual named Bill Ditty to appraise the business. Ditty testified that he calculated the value of the business to be approximately $86,000.00.

**{¶ 5}** We also note that evidence was adduced regarding the parties' marital debts, consisting primarily of tax liens levied because Gregory failed to file his business taxes. From 2002 until 2007, the parties filed their taxes jointly, but the record establishes that they did not file their federal taxes in 2005 and therefore owe approximately $19,000.00 for that year. At the time of final hearing, Donna was employed as a mail carrier for the United States Postal Service and her wages were being garnished by the federal government for her share of the unpaid taxes from 2005. In 2008, the parties separated, and Gregory separately owes federal taxes from 2008 until the present. Donna's wages were also being garnished for the years of 2008 through 2014 when she refused to file jointly with Gregory.

**{¶ 6}** Furthermore, evidence was adduced which established that the marital residence was encumbered by two mortgages. Gregory paid off the first mortgage in the amount of $60,203.53 between the years 2008 and 2013. However, at the time of the final divorce hearing, there was a second mortgage on the marital

property in the amount $73,142.82. It is undisputed that the funds from the second mortgage were used to purchase the property where Gregory's muffler business is currently situated. The evidence also established that there were tax liens on the marital residence in the amount of approximately $182,000.00 from Gregory's failure to pay his income taxes from 2008 until the present. The record establishes that Gregory made some payments towards the liens while the parties were separated. It is also important to note that Gregory lived alone in the marital residence from 2010 until the date of the final divorce hearing.

{¶ 7} Evidentiary hearings were held before the trial court on July 10, 2014, August 4, 2014, and June 23, 2015. As previously stated, on September 20, 2016, the trial court issued the parties' final judgment and decree of divorce in which it ordered that the parties' marital residence be sold, and the profits from the sale to first be used to pay for the parties' second mortgage and tax liens, with any remaining amount to be distributed equally between Gregory and Donna. Donna was awarded the 5.708 acre lot located next to the parties' former marital residence. Donna was also awarded her retirement pension free and clear of any claim of Gregory. Gregory was awarded the muffler business, as well as the building and real property upon which the business is located. The remaining marital property was divided equitably amongst the parties. We note that neither party requested nor received any spousal support award.

{¶ 8} It is from this judgment that Gregory now appeals.

{¶ 9} Gregory's first assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ERRED TO FIND THAT THE APPELLEE'S

EXPERT WITNESS WAS MORE CREDIBLE THAN THE APPELLANT'S."

{¶ 11} In his first assignment of error, Gregory contends that Deskins provided a more credible appraisal regarding the value of his muffler business than the appraisal provided by Ditty, Donna's appraiser. Specifically, Gregory argues that the trial court gave undue weight to Ditty's appraisal. Gregory also asserts that Ditty was not qualified to appraise the value of the muffler business.

{¶ 12} "In reviewing the trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact." *Shemo v. Mayfield Hts.,* 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000). An appellate court must give deference to a trial court's findings because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Any issues relating to witness credibility and/or the weight to be given to their testimony is the function of the trier of fact. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990); *Seasons Coal* at 80, 461 N.E.2d 1273. Thus, a judgment which is supported by competent, credible evidence will not be reversed on appeal. *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

{¶ 13} Because of its discretion, "[a] trial court has some latitude in the means it uses to determine the value of a marital asset." *Kevdzija v. Kevdzija,* 166 Ohio App.3d 276, 850 N.E.2d 734, 2006-Ohio-1723, ¶ 23 (8th Dist.). "When valuing a marital asset, a trial court is neither required to use a particular valuation method nor

precluded from using any method." *James v. James*, 101 Ohio App.3d 668, 661, 656 N.E.2d 399 (2d Dist.1995).

{¶ 14} During the course of the trial, both Gregory and Donna introduced testimony from experts regarding the valuation of the muffler business. Each expert also offered a report of his or her findings, which contained criticisms of the other expert's appraisal. Gregory's expert, Deskins, based her appraisal on the "income and asset" valuation method. According to Deskins, the muffler business was worth $0.00 under the "income and asset" approach. In her valuation, Deskins imputed a yearly income to Gregory as CEO of the business in the amount of $70,000.00 per year. Deskins also factored the cost of the mortgage on the building where the muffler business was located into her analysis.

{¶ 15} Conversely, Donna's expert, Ditty, made his valuation based on a normalized profit approach. Under the profit approach, Ditty testified the business is worth $86,000.00. Ditty also imputed a yearly income to Gregory as CEO of the business in the amount of $46,000.00 per year. Ditty testified that he did not factor the cost of the building where the muffler business was located into his analysis because the building was not owned by the company. Rather, the records established that the building was jointly owned by both Gregory and Donna. On that basis, Ditty testified that he did not believe the monthly mortgage cost should factor into the overall valuation of the business because the building was marital property.

{¶ 16} Initially, we note that both Deskins and Ditty were qualified as experts in the field of business valuation. Each appraiser testified extensively regarding the

method they utilized in order to provide a valuation for Gregory's muffler business. More importantly, however, there is no indication in the final judgment and decree of divorce that the trial court gave undue weight to the appraisal provided by Ditty. It is clear, however, that the trial court did not believe that Gregory's muffler business, from which he had clearly been profiting in the years since the parties had separated, was, according to *his* expert, worth nothing. The evidence established that the muffler business was marital property from which Gregory had been receiving at least $46,000.00 per year in compensation according to Ditty. Significantly, between 2008 and the date of the final hearing in 2014, the parties had been separated, and Donna had not been receiving any compensation or profits from the business in which she had an ownership interest.

{¶ 17} Nevertheless, in an effort to equalize distribution of the marital property, Gregory was awarded the muffler business (building and land included) free and clear of any claim of Donna. In addition to his salary from the muffler business of (at least) $46,000.00, the tractor worth $20,000.00, and a lawn mower worth $1,000.00, Gregory received approximately $67,000.00 as a result of the divorce, even accepting Deskins' business appraisal of $0.00. Donna received approximately $66,000.00 as a result of the divorce, including an additional $30,000.00 she received as a result of Gregory paying off the first mortgage on the marital residence between 2008 and 2014 in the amount of $60,000.00. Upon review, we find that the record establishes that the trial court did not give undue weight to the business appraisal of Donna's expert, Ditty, over that of Deskins, Gregory's expert. In fact, it actually inured to the benefit of Gregory that the trial

court relied on Ditty's estimation of his yearly salary at $46,000.00, rather than Deskins' estimation of $70,000.00, in order to equalize distribution of the marital assets.

{¶ 18} Gregory's first assignment of error is overruled.

{¶ 19} Because they are interrelated, Gregory's second and third assignments of error will be discussed together as follows:

{¶ 20} "THE TRIAL COURT ERRED TO MAKE AN INEQUITABLE, UNEQUAL DISTRIBUTION OF THE PARTIES['] PROPERTY WHEN IT FAILED TO VALUE THE PARTIES' REAL AND PERSONAL PROPERTY IN RESPECT TO THEIR DEBT RATIO."

{¶ 21} "THE TRIAL COURT ERRED WHEN IT FAILED TO CREDIT THE APPELLANT THE FIRST MORTGAGE PAYOFF AMOUNT AND THEN ORDERED THE SALE OF THE MARITAL PROPERTY SITUATED AT 2529 STATE ROUTE 245, IN CABLE, OHIO."

{¶ 22} In his second assignment, Gregory argues that the trial court made an inequitable distribution of marital property in light of the expert testimony of Deskins regarding the parties' debt ratio.  In his third assignment, Gregory argues that the trial court erred when it ordered the sale of the marital residence after he had paid off the first mortgage on the property.

{¶ 23}  R.C. 3105.171(B) requires that marital property be divided equitably, and an equal division is presumed to be equitable.  "If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines

equitable." R.C. 3105.171(C)(1). "Equality" is the "starting point" for dividing any marital assets and debts; however, the court may divide the marital assets and debt in some other fashion if it finds that an equal division would be inequitable. *Kraft v. Kraft,* 2d Dist. Montgomery No. 25982, 2014–Ohio–4852, ¶ 62, citing *Arnett v. Arnett,* 2d Dist. Montgomery No. 20332, 2004–Ohio–5274, ¶ 8; *see also Neville v. Neville,* 99 Ohio St.3d 275, 2003–Ohio–3624, 791 N.E.2d 434, ¶ 5. In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F).

**{¶ 24}** Because a trial court must consider the assets and liabilities of both parties, dividing marital property requires the trial court to also divide marital debt. *See* R.C. 3105.171(F)(2). Moreover, a reviewing court should not review discrete aspects of the property division out of the context of the entire award, but should consider the distribution within the context of the entire award. *James,* 101 Ohio App.3d 668, 680, 656 N.E.2d 399 (2d Dist.1995).

**{¶ 25}** The trial court has broad discretion to divide property in domestic relations cases, and its decision will not be disturbed on appeal absent unreasonable, arbitrary, or unconscionable conduct. *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998) (citations omitted); *Majeski v. Majeski,* 2d Dist. Montgomery No. 24668, 2012–Ohio–731, ¶ 11. "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Middendorf* at 401. The question before this court is not whether the trial court's division of marital assets was the only way or even the best way to divide the parties' assets; rather, we must determine whether the division was inequitable

as a matter of law or whether the specific method of division chosen by the trial court demonstrated an abuse of discretion.

{¶ 26} It is undisputed that the entire debt load of the parties consisted of tax liens on earnings from Gregory's muffler business and the second mortgage on the martial residence. Specifically, the tax liens (2005, 2008-2014) totaled $100,500.00. The second mortgage totaled $73,142.82. Thus, the parties' debt load at the time of the final hearing was $173,642.82. In order to pay off the entire debt, the trial court ordered the sale of the marital residence, and any sum remaining is to be split equally between the parties. Simply put, by ordering the sale of the marital residence, the trial court provided a reasonable solution by which the parties could pay off all of their tax and mortgage debts, thereby exiting the marriage relatively unencumbered.

{¶ 27} As her portion of the divorce, Donna received her retirement fund valued at approximately $6,000.00 (as of 2012), the vacant lot located next to the marital residence valued at approximately $30,000.00, and personal property valued at approximately $1,100.00. Gregory contends that Donna effectively received an additional $30,000.00 when he paid off the first mortgage on the marital residence between 2008 and 2014 in the amount of $60,000.00.

{¶ 28} For his part of the distribution, Gregory received the muffler business appraised at somewhere between $0.00 and $86,000.00, a tractor worth approximately $20,000.00, and a lawn mower worth approximately $1,000.00. Gregory argues that since his business has no value (based upon Deskins' appraisal), he only received $21,000.00 in the distribution while Donna received

approximately $66,000.00. Gregory therefore asserts that the trial court's distribution of the marital property was clearly inequitable.

**{¶ 29}** Gregory, however, fails to take into account that even if the muffler business is worth nothing, Ditty testified that he has been receiving at least $46,000.00 per year in compensation from his management of said business. The evidence further established that the muffler business was marital property. Between 2008 and the date of the final hearing in 2014, the parties had been separated, and Donna had not been receiving any compensation or profits from the business in which she had an ownership interest. In addition to his salary from the muffler business of $46,000.00, the tractor worth $20,000.00, and a lawn mower worth $1,000.00, Gregory received approximately $67,000.00 as a result of the divorce, even accepting Deskins' business appraisal of $0.00. Donna received approximately $66,000.00 as a result of the divorce, including the $30,000.00 she received as a result of Gregory paying off the first mortgage on the marital residence.

**{¶ 30}** The trial court's ruling allowed the business to remain intact, and allowed Gregory to maintain his business as he had been operating it, while giving Donna financial credit for her marital share of the property, as well as the first mortgage paid off solely by Gregory. We also note that neither party requested nor was awarded spousal support. The trial court's equitable distribution of marital property therefore allowed the parties to leave the marriage on even footing. Accordingly, we find that the trial court did not abuse its discretion in distributing the parties' assets as it did.

**{¶ 31}** Gregory's second and third assignments of error are overruled.

{¶ 32} All three of Gregory's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Ronald C. Tompkins
John C.A. Juergens
Hon. Lori L. Reisinger